HOPPOCK and others vs. JOHNSON and another.

A, who held a mortgage on certain real estate of B in New York, executed, at B's request, an assignment of his mortgage to C, and left the same in B's hands to be used in effecting a settlement of a suit commenced by C against B, with an understanding that B should execute a bond for his indebtedness to A, and a mortgage to secure the same on certain lands in Wisconsin, and should send the bond to a person designated by A, and procure the mortgage to be recorded, which B did. *Held*, that B did not act as A's agent in the transaction so as to charge the latter with notice of a mortgage on said lands in Wisconsin, executed by B to C before his mortgage of the same lands to A, but recorded after it.

APPEAL from the Circuit Court for *Rock* County.

Action to foreclose a mortgage on certain lots in Janesville, Rock county, executed and delivered to the plaintiffs by *Albert S. Johnson* on the 31st of December, 1857, and recorded January 23d, 1858. The complaint states that on the 2d of January, 1858, said *Albert S. Johnson* executed to *Emmons Johnson* a mortgage of the same premises to secure the payment of $3,000, and that *Emmons Johnson* procured that mortgage to be recorded on the 11th of January, 1858; but alleges that at the time of the execution of the mortgage to *Emmons Johnson*, the latter knew of the existence of the mortgage to the plaintiffs; and that the mortgage to said *Emmons* was executed and procured to be recorded with intent to defraud the plaintiffs. Besides the usual prayer for judgment of foreclosure and sale, the complaint asks that the mortgage to *Emmons Johnson* be adjudged to be void as against the plaintiffs.

Upon the trial it appeared that on the 1st of August, 1857, *Albert S. Johnson*, who resided in Rochester, Monroe county, New York, was indebted to the plaintiffs for more than $2,500. On that day the plaintiffs commenced an attachment suit against him. In December, 1857, there were negotiations between the plaintiffs and *Albert* for a settlement of the suit. The arrangement talked of by them involved, among other things, a release by *Emmons Johnson* (who was an uncle of *Albert*, and resided in Pennsylvania), of a mortgage held by him as a security for $3,000, on a farm belonging to *Albert*, in Monroe county, New York.

June Term,
1861.

Hoppook et al.
v.
Johnson et al.

On the 28th of December, *Emmons Johnson*, being then in Rochester, went with *Albert* to the office of the plaintiffs' attorneys in that city, and there executed an assignment to the plaintiffs of his mortgage upon the Monroe county farm, which he left in the hands of *Albert* to be used in the final settlement with the plaintiffs; and shortly afterward, on the same day, left the city to return home. When the mortgage on the Janesville property was executed to him by *Albert*, together with a bond for the same indebtedness, the bond was sent by *Albert* to one Pratt, a son-in-law of *Emmons Johnson* in Monroe county, N. Y., and the mortgage to *Albert's* agent in Janesville, to be by him put upon record; and this was done by *Emmons Johnson's* direction, and in pursuance of an understanding between him and *Albert* on the same day that he assigned to the plaintiffs the mortgage on the farm in Monroe county.

The other testimony in the case need not be stated.

The circuit court found as a fact, among other things, that *Emmons Johnson*, at the time the mortgage on the Janesville property was executed to him, had no notice of the execution or existence of the mortgage on the same property to the plaintiffs; that there was due on the mortgage executed to *Emmons Johnson*, $3,525; and as a matter of law that said mortgage to *Emmons Johnson* was a prior lien on the land to that of the plaintiffs. Judgment accordingly. The plaintiffs excepted to the above findings of fact and to the conclusion of law.

*Sleeper & Norton*, for appellants.

*Sloan, Patten & Bailey*, for respondents.

November 2.

*By the Court*, Paine, J. We think there is no sufficient evidence to show that *Emmons Johnson* had any actual notice of the prior mortgage of the appellants. He was undoubtedly aware that *Albert Johnson* was endeavoring to make an arrangement with them to their satisfaction and prevent their proceeding in the attachment suit. He understood that the mortgage which he assigned to them at *Albert Johnson's* request, was to be used for that purpose. But notwithstanding the ingenious argument of the counsel

for the appellants, we think there is nothing to show that he
knew that *Albert* was to give the appellants also a prior
mortgage on the Janesville land, on which he had consented
to take security in the place of the mortgage he had assign-
ed. All of his own acts are entirely consistent with the
hypothesis that he merely intended to accommodate his
nephew by surrendering a security upon property in New
York, which the appellants were willing to take, upon an
understanding that he was to have substituted in its stead
the mortgage on the Wisconsin property. His interview
with his nephew, his proceedings to accomplish that pur-
pose, and his general knowledge that *Albert* was endeavor-
ing to effect a settlement with the appellants, cannot by any
just reasoning be held to furnish ground for the belief that
he knew that *Albert* had promised them a prior mort-
gage on the property he was to substitute as his own
security. And the theory that he had such knowledge is in
itself less credible than the opposite one. For it would be
very natural for him to accommodate his nephew by substi-
tuting one security for another, so as to enable him the better
to arrange with other creditors; but it would be much less
natural for him to surrender a good security for his own
debt, and give the other creditors also a prior lien on the
property which he took in its stead. We think the court
below was right, therefore, in finding that he had no notice.

Nor do we think that the position of the appellants' coun-
sel can be sustained, that *Emmons Johnson* is to be charged
with notice upon the ground that *Albert Johnson* was his
agent, the latter having, of course, knowledge of the prior
mortgage. The general doctrine that where a man acts by
an agent, and it becomes essential to charge him with notice,
it is sufficient to show notice to the agent, is well understood.
But we think it inapplicable here, for the reason that *Albert
Johnson* cannot be considered the agent of *Emmons Johnson*
in this transaction. *Albert* was dealing with the appellants
for himself, and not for *Emmons Johnson*. The latter had
no interest in the negotiation. It is true he had executed
an assignment of the mortgage he held, to the appellants,
and left it in the hands of *Albert* to be used by him in com-

pleting his negotiation with them. But that did not make him a party to the negotiation. He was so no more than he would have been had he assigned it directly to *Albert*, leaving him to re-assign it to the appellants. The substance of the transaction between him and *Albert* was, that he exchanged with *Albert* the one security for the other. And the fact that, at *Albert's* request, he made the assignment directly to the appellants instead of to *Albert* himself, does not change its character or involve him in the transactions of the others.

Neither does the fact that *Albert* delivered the mortgage to *Emmons* by sending it to the register, make him the agent of *Emmons* so as to charge the latter with notice by reason of his knowlege of the prior mortgage. *Albert*, in so delivering the mortgage, was acting for himself as one of the principal parties to the agreement between himself and *Emmons*, which was not completed on his part until he had so delivered it. Suppose A makes a mortgage to B; then he borrows money of C, who has no knowledge of the first mortgage, and agrees with him to execute a mortgage on the same property and to deliver it to an agent appointed by C. Does the fact that he thus delivers it under C's direction make him the agent of C, so as to charge C with notice of B's mortgage because A knew it? It seems really too obvious for argument that it does not; and yet such is this case.

The appellants' counsel also objects that the judgment is for too much. It is for the amount due on the mortgage assuming nothing to have been paid. But *Emmons Johnson* was asked how much was due, and made a general statement of the amount of principal and interest, which was something less than the amount of the judgment. But it does not appear that he had the papers present, and *Albert Johnson* testified that nothing had ever been paid, and there is no other proof tending to show any payment. It is also suggested that the statement of *Emmons Johnson* was made with reference to the old mortgage which he had assigned. That may have been so; but at all events we do not think that his general statement, made without any computation, should be allowed to overthrow the positive evidence derived

from the papers and the statement that nothing had been paid. It does not appear to have been intended as an accurate or definite statement; nor does it appear with sufficient certainty that he referred to the amount then due upon this mortgage, to give it that effect.

It follows, therefore, that the mortgage of *Emmons Johnson*, being first put on record, was entitled to priority; and the judgment of the circuit court is affirmed, with costs.