AETNA INDEMNITY COMPANY *v.* FRED SCHROEDER, ET AL.

Opinion filed May 29, 1903.

### Principal and Agent.

　　1. The plaintiff became surety for Clemens, a local agent of the Great Western Elevator Company at Leonard, N. D., and became responsible for losses by the elevator company caused by his fraud or dishonesty in his capacity as agent. The plaintiff was about to relieve itself from such suretyship or risk on account of unfavorable reports as to Clemens' drinking and gambling habits, but concluded not to withdraw the bond if Clemens would furnish it an indemnity bond. The plaintiff wrote to Mitchell, the general superintendent of the Great Western Elevator Company, concerning the matter, and asked Mitchell to have Clemens execute a bond with sureties. Mitchell communicated these facts to Clemens, who procured the defendants to sign his indemnity bond. This bond was sent to Mitchell, who sent it to the plaintiff. *Held,* on these and other facts recited in the opinion, that Mitchell was not the agent of the plaintiff to the extent that any knowledge which he might have had as to Clemens' acts of dishonesty or fraudulent acts as agent would be imputed to, and become chargeable to, the plaintiff.

### Notice to Agent.

　　2. The knowledge of an agent will not be imputable to his principal when the agent is a nominal agent merely, or acting as to ministerial matters merely, nor when the agent has knowledge of facts in relation to the matter in which he is acting when his interests, or the interests of another for whom he is acting, are adverse to those of the principal. In such cases the law will not presume that the agent communicated the facts within his knowledge to his principal, and the principal does not become chargeable with such knowledge.

### Liability of Principal—Indemnity Bond.

　　3. If Mitchell had knowledge of the gambling or drinking habits of Clemens, or of other vices not connected with his duties as elevator agent, his failure to disclose such facts to the defendant sureties would not relieve them from liability on the bond.

### Release of Sureties.

　　4. Whenever the duty arises to disclose facts to one about to become surety for an agent, it is only as to facts affecting the risk in respect to the subject-matter of the agency that the duty arises to disclose such facts and subject to this rule, the duty does not arise to disclose facts known as to the personal habits of the agent.

**Judgment Notwithstanding Verdict.**

> 5. A motion for judgment notwithstanding the verdict will not be granted under chapter 63, p. 74, Laws 1901, unless it clearly appears from the evidence that the party making the motion is entitled to it as a matter of law, upon the merits. If it appears probable from the record that a different showing can in good faith be made on another trial, the motion should be denied.

Appeal from District Court, Cass County; *Charles A. Pollock.* J.

Action by the Aetna Indemnity Company against Fred Schroeder and Jacob Biewer. Verdict for defendants. Motions for a judgment notwithstanding the verdict and for a new trial were denied, and plaintiff appeals.

Reversed.

*Ball, Watson & Maclay,* for appellant.

Knowledge possessed by Mitchell not imputed to plaintiff for two reasons:

1st. In procuring the bond, he was not doing the things which ordinarily raise the relationship of agency. If agent at all, he was Clemens' agent. He was the mere channel through whom Clemens was informed that he must give a bond, and through whom such bond was forwarded to plaintiff. This did not create the relation of agency between plaintiff and Mitchell. 2 Pom. Eq. section 668; *Wyllie* v. *Pollen,* 3 De Gex, J. & S. 596, 601.

2d. The plaintiff had concluded to cancel its bond given to the Elevator Company for Clemens' fidelity. But as the Elevator Company desired to keep Clemens, and to enable it to do so, plaintiff consented to accept a counter bond from Clemens. In reality it was given that the Elevator Company might retain Clemens; and in that sense it was for the benefit of the Elevator Company and Clemens, and the case therefore falls under the well defined exception to the rule imputing the knowledge of the agent to the principal, that where the agent is personally interested in procuring the act to be done, it will not be presumed that he will disclose to his principal, information which might result in preventing the performance of the act. Mechem on Agency, section 723; *American Surety Co. of New York* v. *Pauly,* 170 U. S. 133, 155, 18 Sup. Ct. Rep. 552, 42 L. Ed. 977; *Fidelity Co.* v. *Courtney,* 22 Sup. Ct. Rep. 834, 841. The court erred in admitting proof of conversation between Comrie, agent of the Elevator Company, and one Leisen, where the former said that "the

bond was required of Clemens because of his shortage." This was a mere narration of past events, not made as a part of such agent's duty to his principal, and not binding upon the latter, *a fortiori*, not binding upon plaintiff. *Short* v. *Northern Pacific Elevator Company*, 1 N. D. 159, 45 N. W. Rep. 706. The court erred in admitting testimony as to Clemens' use of intoxicants to get trade, and keeping such liquors at the elevator; also in its instruction to the jury that "if Clemens was engaged in an unlawful traffic of intoxicating liquors in and about the elevator," and if the plaintiff knew about it, the defendants were not liable upon the counter bond. The court further erred in charging that if Clemens had been "guilty of acts involving moral turpitude," to Mitchell's knowledge, the plaintiff could not recover. This is a matter said to have occurred three years before the counter bond was given, was not pleaded, nor involved in the issues, and plaintiff was unprepared to meet it. It was not contended that plaintiff ever heard of these transactions, yet the court virtually charged the jury to find for defendants. If Clemens used and gave away intoxicating liquors, or was guilty of acts of moral turpitude, not involving dishonesty, it would not release defendants from their obligation upon the bond. *Bank* v. *Brownell*, 9 R. I. 168, 11 Am. Rep. 231; *LaRose* v. *Logansport Nat. Bank*, 1 N. E. Rep. 805; *Bostwick* v. *VanVoorhis*, 91 N. Y. 353.

The court erred in denying plaintiff's motion for a directed verdict, and for judgment notwithstanding the verdict. The defense was based upon the theory that Clemens was proved criminally dishonest, having been found short 409 bushels on a settlement in April, 1900; that plaintiff knew this, when it took the counter bond, and having failed to notify the sureties of the shortage, the latter were released. Plaintiff's answer to this contention was, that there was no embezzlement or dishonesty in this transaction; that plaintiff did not know of the shortage, and as the sureties made no inquiry of plaintiff, it violated no duty to defendant. Sureties are liable "when the shortage or failure to pay over money received within the scope of their duties arises from neglectful habits, carelessness or mistake of the agent, not accompanied by a conversion of moneys of his principal to the use or benefit of the agent, and without any intent on his part to deprive his principal of it, and where there is no moral turpitude, but only moral delinquency on the part of the agent." *Wells-Fargo Express Co.* v. *Walker et al.,* 50 Pac. 353; *Tel. Co.* v. *Barnes,* 64 N. Y. 385; *Lancashire Ins. Co.* v. *Callahan,* 71 N. W. Rep, 261;

*Howe* v. *Farrington,* 82 N. Y. 121; *Bostwick* v. *VanVoorhis,* 91 N. Y. 353. Under the circumstances disclosed in the record, plaintiff was not bound to communicate to defendants, the fact that Clemens had been short 409 bushels of wheat, even if it knew it. *Magee* v. *Manhattan Life Ins. Co.,* 92 U. S. 93, 23 L. Ed. 699; *Aetna Life Ins. Co.* v. *Mabbett et al.,* 18 Wis. 667; *Home Ins. Co.* v. *Holway,* 55 Iowa, 571, 8 N. W. Rep. 457; *Railway* v. *Ling,* 18 S. C. 116; *Roper* v. *Trustees,* 91 Ill. 518; *Lake* v. *Thomas,* 36 Atl. Rep. 437; *Railway* v. *Gow,* 59 Ga. 685; *Warren* v. *Branch,* 15 W. Va. 21; *Cawley* v. *People,* 95 Ill. 249; *Company* v. *Jackson,* 83 Tenn. 418.

*Benton, Lovell & Holt,* for respondents.

From a *resume* of the evidence, there was abundant proof to warrant the jury in finding that the counter bond was required by plaintiff on account of defalcations by Clemens to the Elevator Company, and this finding together with the strenuous attempts of Cromwell, plaintiff's general manager, and Mitchell, general manager of the Elevator Company, to conceal such shortages after Clemens' death, and other misrepresentation of the reason for obtaining the counter bond, support the conclusion that Mitchell knew and believed Clemens' shortage to be dishonest. Mitchell and Cromwell were acting in collusion throughout the proceedings relating to the counter bond. Whether they were or not, the knowledge of Mitchell was imputable to Cromwell and binding on plaintiff. Mechem on Agency, section 718; *Union Life Ins. Co.* v. *Smith et al.,* 63 N. W. Rep. 438.

While appellant's counsel contend that Clemens' previous shortages were due to carelessness or neglect, respondent submits that they involve dishonesty, and Mitchell knew it. Respondent concedes the rule stated in *Bostwick* v. *VanVoorhis,* 91 N. Y. 353, and *Wells-Fargo, etc.,* v. *Walker,* 50 Pac. Rep. 353, cited by appellant. The following authorities sustain this position: *Dinsmore* v. *Tidball,* 34 Ohio St. 418; *Smith* v. *Josslyn,* 40 Ohio St. 409; *Franklin Bank* v. *Cooper,* 36 Me. 195; *Taylor* v. *Lohman,* 74 Ind. 418; *Roberts* v. *Donovan,* 70 Cal. 108; *Rapp* v. *Phoenix Ins. Co.,* 113 Ill. 390; *Connecticut, etc.,* v. *Scott,* 81 Ky. 540.

MORGAN, J. In the year 1900, and prior to that year, one William Clemens was the local agent of the Great Western Elevator Company at Leonard, N. D. Said Clemens and other employes of said elevator company were required to furnish bonds to it for the faithful discharge of their duties. The plaintiff gave the elevator

company a bond indemnifying it against all losses occasioned by the fraud or dishonesty of Clemens in connection with his duties as such elevator agent. On May 12, 1900, while said bond was in force, the plaintiff wrote to one Mitchell, general superintendent of the Great Western Elevator Company, that it was unwilling to carry the risk on the Clemens bond any longer, for the reason that unfavorable reports had come to it regarding the drinking and gambling habits of Clemens. On May 22, 1900, the plaintiff again wrote Mitchell that it was unwilling to carry the Clemens risk. In the last letter it stated that it would carry the Clemens risk if Clemens would furnish a counter bond indemnifying the plaintiff if loss should occur under the bond it had given on behalf of Clemens. This letter closed with the following: "We fully appreciate that you do not care to make a change at this season of the year and have therefore decided to help you out to the extent of remaining on the risk if we can be secured. I think Clemens will agree to furnish a counter bond; therefore I enclose a blank form. Please have him execute the same with sureties who are worth double the amount of the bond, which, when fully completed, kindly forward to us and oblige." Upon receiving this last letter, Mitchell telegraphed Clemens to meet him in Fargo, and they met there soon thereafter. At Fargo, Mitchell told Clemens that the plaintiff company would not further carry his risk, on account of his habits, unless he furnished it with a counter bond. Clemens replied that he could furnish a counter bond without trouble, and on June 11th he sent the counter bond, duly executed by two sureties, to Mitchell, the general superintendent of the elevator company. Mitchell sent the bond and the Clemens letter to him to the plaintiff company, at Minneapolis. The conditions on the counter bond were as follows: "Now, therefore, the parties of the first part * * * do hereby jointly and severally covenant and agree to and with the company * * * that they will reimburse, indemnify and keep harmless the said company to the extent of fifteen hundred dollars ($1,500.00) for, from and against all loss, damage, costs, charges and expenses that it shall or may at any time sustain, incur, or be put to, and will pay to the company all moneys that it shall at any time pay or become liable to pay, for, by reason or in consequence of the company having become such surety," etc. This counter bond was retained by the plaintiff, and Clemens continued in the employ of the Great Western Elevator Company until November 3, 1900, when he died. Upon an investigation of his accounts with the elevator

company, he was found to be a defaulter in a sum exceeding $4,000. The plaintiff reimbursed the elevator company to the extent of its liability under its bond; that is, in the sum of $1,500. This action is brought by the plaintiff against the sureties on the counter bond to recover the sum of $1,500 from them on account of the payments made by it to the Great Western Elevator Company pursuant to its liability to that company under its bond. The complaint states the giving of the indemnity bond to the elevator company, and the giving of the counter bond by Clemens to the plaintiff, and both bonds are made a part of the complaint. The defalcations of Clemens, and payment of $1,500 by it to the elevator company on account of such defalcations, are alleged, and judgment is demanded against the defendants for the sum of $1,500. The sureties answer and deny any liability for the reasons: (1) That Clemens was a defaulter in a sum exceeding $1,500 on June 11, 1900, when the counter bond was given; that plaintiff's liability under the bond of indemnity given to the elevator company had accrued and become fixed, to the extent of $1,500, before the counter bond was given; and that the liability of the plaintiff was not increased, enlarged, or added to since the giving of the counter bond. (2) That the plaintiff knew that said Clemens was an embezzler of the elevator company's funds and property when the defendants executed the bond in suit, and failed to disclose that fact to them; that plaintiff and said elevator company fraudulently conspired together to conceal such fact from these defendants, and that they were thereby induced to sign said bond, which they would not have signed, had the facts been truly disclosed to them. There was a trial to a jury, and a verdict for the defendants. Plaintiff moved for a judgment notwithstanding the verdict and for a new trial. A statement of the case was settled and the motions denied. The plaintiff appeals to this court. Error is claimed upon the admission of testimony, and upon instructions given to the jury.

The record shows, in addition to the facts already narrated as to Mitchell's agency in procuring the counter bond, that Mitchell did not know or see or in any way communicate with the defendants before they signed the bond, or thereafter, until November or December following. He did not know until the bond was sent to him who the sureties were to be. He and Clemens had no conversation as to who the sureties were to be. During the conversation at Fargo, Clemens told Mitchell nothing about his relations with the elevator

company that were not known to Mitchell before. Mitchell told him there that if he continued in the elevator company's employ, he would have to procure a counter bond, as the Aetna Indemnity Company would not carry him without this bond. Mitchell's connection with getting this bond consisted in informing Clemens that the Aetna Indemnity Company demanded it, and in turning over to him the blank form of bond furnished him by the plaintiff, and in forwarding to the plaintiff company the bond sent to him by Clemens after it had been executed by the sureties, he was invested with no discretion in the matter. His duties on behalf of the plaintiff were limited and ministerial, simply. It is claimed by the defendants that these facts constituted Mitchell the agent of the plaintiff, to the extent that whatever knowledge Mitchell had of Clemens' conduct while agent for the elevator company is imputable to plaintiff, by reason of such agency. This contention is not conceded by the appellant. The general principle that knowledge of all facts gained by an agent while in the employ of the principal as agent in a transaction is imputed to the principal, and becomes chargeable to him, is conceded, but it is insisted that the facts of this case bring it within the exceptions to that general rule. The exception is that, in cases where the agent is nominally acting for another in ministerial matters, he will not be presumed to disclose to his nominal principal matters within his knowledge, when he is in reality acting for himself or for another as principal, and his or his real principal's interests are adverse to those of the nominal principal. In this case Mitchell was acting in the interests of his company, and for its benefit. The letter from the plaintiff to Mitchell distinctly states that the privilege of giving the counter bond was accorded to Clemens in order that the elevator company might continue to have his services during the remainder of the year. The case falls within the exception to the general rule. By virtue of Mitchell's antagonistic interest, the law will not presume that he would disclose to the plaintiff company any information he might have possessed that would tend to injure the business of his principal, the elevator company. "A principal is not bound where the character or circumstances of the agent's knowledge are such as to make it intrinsically improbable that he will inform his principal." Bigelow on Fraud, section 239. See also, Mechem on Agency, section 623; *Wickersham* v. *Chicago Zinc Co.,* 18 Kan. 481, 26 Am. Rep. 784; *First National Bank* v. *Gifford,* 47 Iowa, 582; *American Surety Co.* v. *Pauly,* 170 U. S. 133, 18 Sup. Ct. 552, 42 L.

Ed. 977; *Benton* v. *Minneapolis Tailoring & Mfg. Co.* (Minn.), 76
N. W. Rep. 265; *Fidelity Co.* v. *Courtney,* 22 Sup. Ct. 834, 47 L. Ed.
—. If it should be admitted, therefore, that Mitchell was the agent
of the plaintiff company, and procured the bond at its request and for
its benefit, nevertheless he would not be presumed to have disclosed
any knowledge of Clemens' dishonesty while employed by the
elevator company, whose interests were adverse to disclosing such
knowledge. From the facts stated, it seems clear, however, that he
was not such an agent of the plaintiff company that his knowledge
acquired before he performed any service to it, and while in the em-
ploy of another, would be imputed to the plaintiff company. His ser-
vice was more that of a mere messenger, and of purely ministerial
character. "The employment of an agent or attorney to do a merely
ministerial act for his principal does not constitute him such an agent
that the rule as to constructive notice will apply." Pomeroy on Eq.
Jur. vol. 2, section 668. Also *Wyllie* v. *Pollen,* 3 De Gex, J. & S. 595;
*Anketel* v. *Converse,* 17 Ohio St. 11, 91 Am. Dec. 115; *Hoppock* v.
*Johnson,* 14 Wis. 303.

The court, in its charge, gave to the jury the following instruc-
tion, which was duly excepted to: "You are further
instructed that, for the purpose of obtaining the bond in suit, the
plaintiff indemnity company constituted and appointed Mr. Mitchell,
as manager of the Great Western Elevator Company, plaintiff's
agent, and that, during the time Mr. Mitchell was acting for and in
conjunction with the manager of the plaintiff indemnity company in
obtaining the bond in suit, any knowledge possessed by Mr. Mitchell
as to the character or habits or previous defalcations of William
Clemens was imputable to the plaintiff indemnity company; and if
Mr. Mitchell, while acting as agent for the plaintiff for the purpose
of obtaining the bond in suit, knew that William Clemens had pre-
viously been guilty of criminal defalcations while acting as the local
agent at Leonard for the Great Western Elevator Company, or if
Mr. Mitchell, while acting for the plaintiff indemnity company, as
aforesaid, knew that William Clemens had previously been guilty of
acts involving moral turpitude while acting as the local agent for
the Great Western Elevator Company at Leonard as aforesaid, or if
Mr. Mitchell, while acting for the plaintiff indemnity company in ob-
taining the bond in suit as aforesaid, knew that William Clemens
had previously embezzled the money or property of his employer, the
Great Western Elevator Company, then I instruct you that such

knowledge of Mr. Mitchell was imputable to the plaintiff indemnity company, and that the plaintiff is chargeable with and bound by such knowledge of Mr. Mitchell; and you are instructed that if the plaintiff indemnity company, knowing through Mr. Mitchell as aforesaid, of previous dishonesty or embezzlement or other criminal conduct on the part of William Clemens while the local agent of the Great Western Elevator Company at Leonard, had the opportunity, but failed to disclose to the defendants the aforesaid previous dishonesty or criminal defalcations or embezzlement of said Clemens at the time of or previous to accepting from the defendants the counter bond in suit, then, as a matter of law, the defendants are not liable to the plaintiff in this action, and you must bring in a verdict for the defendants."

In this instruction the trial court told the jury that Mitchell was the agent of the Aetna Indemnity Company, and that his knowledge of Clemens' embezzlement or criminal misconduct as agent was imputable to, and became the knowledge of, the plaintiff. This was said without qualification, and, under the cases cited, was prejudicial error. In this instruction the jury was told that, if Mitchell had knowledge that Clemens was guilty of criminal conduct while acting as agent for the elevator company, then plaintiff was bound to disclose such knowledge to the defendant bondsmen, and, failing to do so, the defendants would not be liable on the bond given. The court also instructed the jury that if Clemens violated any law of the state in connection with his business as agent of the elevator company at Leonard, and the elevator company knew such fact, before the counter bond was given, and the defendants did not know it, Mitchell should have advised the defendants, and, failing to do so, defendants would not be liable. The evidence on this point showed that, three years prior to giving the counter bond, Clemens had kept beer in the elevator, and given it to customers to induce further trade. The evidence does not show that Mitchell had notice of it at the time or later, or that any of the agents of the elevator company knew of such conduct on the part of Clemens at the time of the giving of the bond. Conceding that Mitchell knew that Clemens had kept beer at the elevator contrary to law, even, and conceding further that the plaintiff company had notice of that fact, it does not follow that the plaintiff company must disclose this fact to the defendants, and, if it failed to do so, that they would be released from responsibility on the bond. It must be remembered that the plaintiff company was not

asked by the bondsmen as to the habits of Clemens in this or any other particular. Neither was Mitchell asked as to these matters. Neither Mitchell nor the plaintiff company had any communication with the bondsmen, and did not request them to become sureties for Clemens. The counter bond recites that the plaintiff company became surety for Clemens at the request of the defendants and of Clemens, and it nowhere appears that defendants were requested by the plaintiff or the elevator company to become such surety. It is only as to matters affecting the risk as to Clemens' fraud or dishonesty in acting as agent prior to the giving of the counter bond that the duty fell upon the company to inform these defendants, if it had known of such misconduct. There must be a concealment or withholding of information material for the sureties to know in respect to dishonest transactions as agent prior to the giving of the bond. It must be such a concealment of known facts as to amount to a fraud upon the sureties. As said by the supreme court of Rhode Island: "It is not alleged here that the directors withheld any information inquired for, or said or did anything that could have a tendency to mislead the surety. If there had been an actual default, or an attempt by the directors to cover it up or reimburse themselves at the expense of the surety, the case would be different. Moreover, the cases which we have referred to are cases in which the information held or not disclosed related in some way to the business which was the subject of the suretyship. In this case the undisclosed information related, not to the business which was the subject of the suretyship, and not to the conduct of the cashier as cashier, but to his general character." *Atlas Bank* v. *Brownell,* 9 R. I. 168, 11 Am. Rep. 231. In that case a bank cashier was known by the bank directors to be addicted to gambling. In consequence of this fact, the directors required the cashier to give a larger bond, with an additional surety. The additional surety was not informed of the cashier's gambling habits, and attempted to be released from liability because he was not informed. His attempted defense failed. The supreme court of Indiana lays down the rule as follows: "The misconduct of which the employer has knowledge, and which will release the guarantor if concealed, must, however, relate to the service in which the person whose conduct is guaranteed is engaged, and must be something more than mere moral delinqency, having no relation to or connection with the subject matter of the guaranty." *La Rose* v. *Logansport National Bank,* 102 Ind. 332, 1 N. E. 805. See also,

*Franklin Bank* v. *Stevens,* 39 Me. 552; *Bostwick* v. *VanVoorhis,* 91 N. Y. 353.

For the reasons given, the giving of these instructions was erroneous, and would have been erroneous even if Mitchell had been the agent of the plaintiff.

Plaintiff moved for a directed verdict in his favor at the close of the testimony, and, after verdict, asked for judgment notwithstanding the verdict or for a new trial. It is now urged that judgment notwithstanding the verdict should be directed by this court, under the provisions of chapter 63, p. 74, Laws 1901. That law was originally enacted in Minnesota in 1895, and the construction placed upon it by the Supreme Court of Minnesota is deemed to have been adopted by its enactment in this state. The practice is well settled in that state that a motion for judgment notwithstanding the verdict will only be granted in those cases where it is clear, as a matter of law, upon consideration of all the evidence, that the cause of action or defense has not been shown in point of substance. If it appears probable from the evidence produced at the trial that proof can be supplied on another trial to cure the defect, such motion will be denied. *Marquardt* v. *Hubner* (Minn.), 80 N. W. Rep. 617; *Cruikshank* v. *Insurance Co.* (Minn.), 77 N. W. Rep. 958; *Richmire* v. *Andrews & Gage Elev. Co.,* 11 N. D. 453, 92 N. W. Rep. 819. In other words, such motion for judgment will not be granted in case of conflict of evidence, although such conflict is such that the trial court will be justified, in its discretion, in granting a new trial notwithstanding it. The party making such a motion must base it upon a state of facts that will warrant the court in granting it, without trespassing upon the province of the jury to be the judges of all questions of fact in the case. Under this rule, it remains to be determined whether the trial court should have granted the motion, or whether this court should do so now, under the facts shown by the record. The evidence shows that the agent, Clemens, was short in his accounts in April to the extent of about $400. Whether such shortage was a dishonest one or not is a disputed question, and a finding by the jury either way would probably not be disturbed. This shortage was settled by Clemens soon thereafter. Whether it was settled before or after giving the counter bond is not clearly shown. The counter bond was given on June 11th, and the shortage was settled, as testified to, in May or June. Another matter of evidence pertaining to Clemens' and the defendants' liability under the

counter bond that is controlling upon the question whether the court should now grant the motion for judgment notwithstanding the verdict is that Clemens took into the elevator large amounts of wheat from January to August, 1900, without issuing any tickets therefor, and without reporting it to the elevator company at the time, and he did so under an express agreement with the farmers depositing it in the elevator that no storage was to be charged therefor, and this was done contrary to instructions. The inference is strong that this unreported wheat was used by Clemens in making the April accounting to his company when an agent was sent there to check up his accounts. If Clemens was actually and dishonestly short in his wheat accounts—that is, if he was dishonestly using unpaid for and unreported wheat in settlements with his company—before June 11th, then he was a defaulter before June 11th. If he was a defaulter in a sum exceeding $1,500 before June 11th, then no liability ever attached under the counter bond on which this suit is based. The full sum of plaintiff's liability had become fixed by Clemens' defalcation before the counter bond was given, and no additional liability could attach to the plaintiff by his defalcations after it was already liable to the full penalty of its bond. The counter bond was given to indemnify the plaintiff for any liability it might incur by reason of continuing as surety for Clemens as agent of the elevator company. The counter bond covered no accrued or past liabilities. It indemnified the plaintiff as to Clemens' defalcations after June 11th only. The condition of Clemens' account with the company on June 11th is therefore a material question in determining whether defendants are liable on the counter bond, and, if liable, to what extent liable. These are questions for a jury on another trial.

The judgment is reversed, a new trial granted, and the cause remanded for further proceedings according to law. All concur.