## MILLER et al. v. BANK OF HARVEY.

(134 N. W. 745.)

**Judgment — non obstante veredicto.**

1. Although, generally speaking, a motion for judgment *non obstante veredicto* and for a dismissal of the action should not be granted, unless the record shows not only that the verdict is not sustained by the evidence, but also that there is no reasonable probability that the defects in the proof or pleadings can be remedied on a new trial, the rule does not apply in a case of a total failure of proof on the one vital issue in the case, which is caused by the plaintiff admitting, on his cross-examination, the facts establishing the defense, and entirely admitting away his case, and where the only effect of granting a new trial will be to give the plaintiff a chance to change his testimony upon that trial.

**Mortgage — usury — demanding settlement of distinct claim as condition to extension of mortgage.**

2. The collection of another and distinct claim at the time of extending a mortgage, and demand of the payment or settlement of such as a condition subsequent to extending such mortgage, does not constitute usury, even though the collection is brought about by the demand of and receipt from the debtor of another note, which is secured by the new mortgage, which is given as an extension of the former one, and though the original mortgage debt, which is also secured by said mortgage, draws the highest rate of interest that may be legally contracted for.

Opinion filed January 26, 1912.

Appeal from District Court, Wells county; *Goss, J.*

Action by Joseph and Marianna Miller against the Bank of Harvey. Judgment for defendant, and plaintiffs appeal.

Affirmed.

*Otto Grethen,* for appellants.

*John O. Hanchett and Bessesen & Berry,* for respondent.

BRUCE, J. This is an action to recover under the usury laws (§ 5513, Rev. Codes 1905) double the amount of all the interest paid. It comes to this court on an appeal from an order of the district court, setting aside a verdict for the plaintiffs, and entering judgment *non obstante veredicto* in favor of the defendant.

It is undisputed that on March 2, 1908, plaintiffs (appellants herein) gave three notes, aggregating $3,000, to the defendant, which notes bore interest at the rate of 12 per cent, and which were afterwards paid by the plaintiffs. It is also undisputed that at the time these notes were given (one of them being for $1,494, one for $906, and one for $600) that plaintiffs only owed $2,400 on the prior mortgage notes, which were taken up at the time of the giving of the notes in question; and that if the $600 note was given as a bonus and received as a bonus for the loan evidenced by the other notes, or as additional interest therefor, and as claimed by the plaintiffs and appellants, that the transaction was usurious. It is also equally clear that if this additional note was given in payment for commissions on a separate and distinct land transaction, or in settlement of a claim for commissions under such transaction, and not as additional interest or bonus on or for the acceptance of the other two notes, as claimed by the defendant, that the transaction was not usurious. It is to be remembered in this case that the action is brought under the statute to recover double the interest paid, and is not one to recover the money paid on said $600 note, or to cancel the same. The controversy hinges entirely upon the question as to whether the $600 note in question was bonus, which the bank compelled plaintiffs to give and pay for renewing the two former notes, amounting to $2,400, and which were past due at the time of the transaction, or whether it was given in settlement of a land deal which the president and cashier of the bank had negotiated for plaintiffs, and which the plaintiffs refused to "go through with," whereby said presi-

dent and cashier, who were carrying on their land business separate
and distinct from the business of the bank, and under the name of
Renfrew & Blanch Land Company, claimed to have lost a commission
or profit of $3,000.

The appellants allege that the court erred in setting aside the verdict,
and that, even if it was justified in doing so, it had no right to enter
judgment in favor of the defendant and against plaintiffs, and to dis-
miss the action in spite of the verdict, but should have granted a new
trial. They claim, and rightly, that "a motion for judgment not-
withstanding the verdict should not be granted, unless the record shows,
not only that the verdict is not sustained by the evidence, but also that
there is no reasonable probability that defects in proof or pleadings can
be remedied on a new trial." Houghton Implement Co. v. Vavrosky,
15 N. D. 308, 109 N. W. 1024; Meehan v. Great Northern R. Co. 13
N. D. 432, 101 N. W. 183; Welch v. Northern P. R. Co. 14 N. D.
19, 103 N. W. 396; Ætna Indemnity Co. v. Schroeder, 12 N. D. 120,
95 N. W. 436. The defendant, on the other hand, claims, and rightly,
also, that the rule propounded by the plaintiffs, and expressed in the
authorities mentioned, can have no application in a case where it is not
a question of the plaintiff's failing to offer testimony on some branch of
the case, or sufficient testimony, but a case of a total failure of proof on
the one vital issue in the case, caused by the plaintiff's admitting, on
his cross-examination, the facts establishing the defense, and entirely
admitting away his case. It does not apply, it insists, and also correctly,
where the only effect of granting a new trial will be to give the plain-
tiff a chance to change his testimony upon another trial.

The testimony of the witnesses J. L. Blanch and S. S. Renfrew, the
cashier and president of the defendant bank, and the members of the
Renfrew & Blanch Land Company, is clear upon the proposition that
the $600 note was received and demanded in settlement of a contro-
versy over a real estate transaction in which the defendant bank had no
interest or connection, and was not taken as a bonus for the loan, or
as a device to evade the statute, or to cover up a usurious transaction.
The testimony of these witnesses is abundantly borne out by the docu-
mentary evidence, and the entries in the books of the bank and of the
Renfrew & Blanch Land Company. The total sum of all of the notes, it
is true, was secured by one mortgage, and that was made to the bank, and

all of the notes in question were made payable to the bank, also. It is clear, however, that this was done merely for convenience, and that the notes might share equally in the security; and it is undisputed that $906 of the indebtedness was owing to the Winniesheik County State Bank, of Decorah, Iowa, held by the Bank of Harvey for collection; that $1,494 was owing to the Bank of Harvey; that after the notes were taken the $1,494 note was entered in the discount register, or "bills receivable" book of the bank, and a record of the $906 note was made in a book containing an account of the business of the Winniesheik County State Bank, of Decorah, and that the $600 note was entered in a private book of the Renfrew & Blanch Land Company, kept by Blanch, and also by Renfrew, in a private book of his own; that neither the $600 note nor the $906 note were ever entered in the bills receivable book, or any book or record of the bank, as a part of the assets of the bank; and that when the notes were paid credits were made, respectively, to the bank of Harvey, to the Winniesheik County State Bank, of Decorah, Iowa, and to the Renfrew & Blanch Land Company. It also appears that in making its statements to the bank examiner, as provided by law, the bank did not include the.$600 note as a part of its assets. In regard to these matters, there is no contradiction in the testimony.

We have, then, only one question to consider, and that is: Did the testimony of the plaintiffs in any way prove the proposition that the note was given as a bonus and as a means to evade the usury laws, and not in settlement of the controversy over the land transaction? For that there was a land transaction and a controversy over the same there can be no question; and it is not disputed. The testimony of plaintiff Joseph Miller, and his is the only testimony upon the subject (his wife not testifying as to the exact transaction), was that "they were scared to give the money up, and I owed $2,400; and I come and wanted to settle with them, and they would not settle that before I paid them some money anyway; so I did not get any money at all, and I was there three or four times, and so I didn't settle at all. Mr. Blanch, the cashier of the Bank of Harvey, would not settle. He said he would settle when you give me so much commission. When he spoke about giving the commission, he told me I had to, or else we would make you lots of trouble on the note of $2,400; and I told him it was pretty hard

to give up this money, and he told me I could not do anything without the money, or else you will have to give us a note for that much." And, in answer to a leading question put by his counsel, and objected to by the defendant, "As a commission to make a new loan?" he answered: "Yes. Yes; they take up the commission. It was that way, that commission for the $2,400. That is what they proposed." On cross-examination, however, he admitted that he had a talk with Renfrew & Blanch about selling his land; and that he listed the land with them for the sale (though he claimed that the agreement was not as they stated, and that there were conditions to the listing); and that he knew that they were figuring on selling the land for him. When pinned down as to what matter it was that had been settled by giving the $600 note, he said: "Yes; the land business is the matter he referred to that had to be settled up. They wasn't mad, except when I come to settle they was mad; and they said, 'We can make money on your land,' and I said, 'I know.' As to their wanting $1,000 for me to settle, they wanted that to settle the $2,500 note. I don't want to argue. It might be they wanted those thousand dollars to settle for this trouble about the land." He also testifies that he could have got the money with which to take up the former notes of $2,400, for an extension of which the new notes of $1,494 and $906 were given from other sources; and that there were many people engaged in the loan business at Harvey; and that they all wanted to loan money. That "Ed Schultz went in there with the idea of fixing up the deal, so that he could make me a loan and take up this deal. That is what he went in there for. If I get the money from another man, he told me I could get the money I want to pay Renfrew off. He offered to get me the money to pay off Mr. Renfrew. There was one man so anxious to furnish me the money that he volunteered to furnish it, and that was Ed Schultz." In another place he stated that "after this time, when I had this talk with Morris in April, about a month after giving the $600 note, I was there in the store, and we talked all this thing over, and I said, 'What do you think about what the bank done with me?' and he said, 'What?' and I said: 'Now they take $600, too, because of this thing I don't sell the land to them; and I don't get the Bob Lisle land, and they don't get my land anyway, and I don't give it to them,' and I told Morris they take $600 off me."

One of the main contentions of the plaintiff indeed is not that he did not give the $600 note in settlement of the land transaction, but that he had merely given to Mr. Renfrew and Mr. Blanch a conditional right to sell the land; and that he should not have been charged with commissions on the land matter at all. But we are not here called upon to pass upon this point. Whether he should have been required to pay $600 in settlement of the claim for commissions in the land transaction is one thing. Whether the $600 was received as a bonus for making the new loans, and in order to evade the usury laws, is another. Even if we should find that the cashier of the bank absolutely refused to extend the loan, and threatened to foreclose the same, unless the plaintiff made a settlement for the commissions upon the land transaction, which were claimed by the real estate firm, the finding would not make the transaction usurious, or entitle the plaintiff to recover double the amount of all the interest paid. In order that a transaction may be usurious, so as to come within the statute, usurious interest must have been knowingly and intentionally paid by the borrower, and received by the lender. Mahoney v. Mackubin, 54 Md. 268; Fellows v. Longyor, 91 N. Y. 324; Waldner v. Bowden State Bank, 13 N. D. 604, 102 N. W. 169, 3 Ann. Cas. 847. A collection of another claim at the time of extending a mortgage is not necessarily usurious. Marsh v. Howe, 36 Barb. 649; Swanstrom v. Balstad, 51 Minn. 276, 53 N. W. 648. It seems to us perfectly clear that the testimony of the plaintiffs not only fails to prove a usurious transaction, but conclusively proves the opposite; and that to grant a new trial under such circumstances would merely give to the plaintiffs an opportunity to change their testimony.

The judgment of the District Court is affirmed.

Goss, J., being disqualified, did not participate in the hearing of the above-entitled action.