PATRICIA GENDLER v. S. S. KRESGE COMPANY.[1]

December 6, 1935.

No. 30,604.

[1]Reported in 263 N. W. 925.

K. M. Krost and B. D. Grogan, for appellant.

H. L. & J. W. Schmitt, Charlotte Farrish, and L. D. Keogan, for respondent.

HOLT, JUSTICE.

Plaintiff sued defendant for slander and also in a separate action sued it for assault. The two actions were consolidated for trial. Defendant consented thereto, but insisted on a separate verdict in each action. Plaintiff's attorney stated that it was not necessary to decide at the beginning of the trial whether there should be two verdicts or one. In the charge the court directed the jury to return one verdict only, and in case the verdict was for plaintiff to designate therein the amount of the general damages and the amount of the "special damages" found. The jury returned one verdict fixing plaintiff's general damages at $500 and her special damages at $2,000. Defendant moved in each case for judgment *non obstante* or a new trial; and in each case assigned as ground for a new trial that it was error to require but one verdict. In the court below the amounts of the verdict were challenged as excessive, being given under the influence of passion and prejudice. On this appeal there is no assignment that the verdict is excessive. Only two questions are raised by the four assignments of error on this appeal, *viz.*,

did the court err in directing the jury to return one verdict in these two actions consolidated for trial? Did the court err when it denied defendant's motion for judgment notwithstanding the verdict?

In order to understand the rulings it is necessary to state the substance of the testimony, at least as far as it tends to support the verdict rendered. Plaintiff, a healthy, bright girl about ten and one-half years old, residing in the city of Mankato, where her father has a store, around eight o'clock in the evening of August 18, 1934, entered defendant's store in the same city, in company with her cousin, to exchange a green barrette for one of another color. She had received the article as a gift from an older sister, who, a couple of hours earlier, had bought it for ten cents at defendant's store. It seems there are two other Five- and Ten-cent Stores in the same block, and to prevent confusion in case of customers' bringing back goods for exchange, each store has a differently colored paper bag or sack in which the articles are placed when sold. And defendant had the rule that when an article bought was brought back for exchange it should be brought back in the same bag in which it was placed when sold. Also, that the manager or assistant manager, and not a clerk who made the sale, must allow the exchange. Plaintiff brought back the barrette without the bag, and when the clerk in charge of the barrettes was approached for the exchange she asked plaintiff where the bag was, and plaintiff stated that she had thrown it away. The clerk called the assistant manager, Mr. Burris. He came up to plaintiff, learned of her errand, and was told that her sister had bought the barrette. He thereupon, as plaintiff and her cousin testified, snatched the barrette out of plaintiff's hand, as he, in an angry tone, said: "Where is the sack? I saw two girls wandering around here that looked just like you. I saw a green barrette on the table and now it is gone, and you were around at the time." Then he told plaintiff to go home and bring her sister. She did and returned with her mother and sister, and after some explanation plaintiff was permitted to exchange the article. There were others present who observed the parties and what transpired, though not

hearing all the conversation. Plaintiff was upset and cried. There was testimony that from that time on there was quite a noticeable change in plaintiff. She became nervous and shy, lost weight, could not keep up her schoolwork, perhaps mostly on account of her irregular attendance due to the condition of her health. There was much testimony from teachers and near neighbors as to the change that took place in plaintiff's appearance, disposition, and capacity for play, work, and study after August 18, 1934. Two doctors were of the opinion that this change was due to the nervous and mental shock received from what Burris did and said on that occasion. Two other doctors, equally as well qualified as experts, were of the opinion that the affliction from which the girl suffers was not caused by what took place when she met Burris. One of the two doctors, who testified in plaintiff's behalf, had been her doctor all her life, and was in position better to observe and judge of the change that had taken place than any one of the others. He not only attributes the change in plaintiff's condition to the conduct of Burris, but gives rather a gloomy prognosis of her future. At any rate, the evidence was such that it justified the jury in concluding that the impairment of plaintiff's health was proximately due to the wrongful conduct of Burris toward her.

We do not think the error assigned on the direction to return one verdict only was to the prejudice of the defendant. Of course it was a mistake to bring two actions. There was but one wrong. It occurred in less than one minute when Mr. Burris snatched the barrette from the plaintiff, uttering at the same time the few slanderous words mentioned. The assault, standing alone, was without substance. The snatching of the barrette from plaintiff's hand merely accompanied and gave significance to the words he used. And it would have eliminated every excuse for this appeal if the court, during the trial, had directed a dismissal of the assault action. Every result from the alleged assault is embodied in the special damages pleaded in the slander action. In other words, the general damages in the assault action are identical with the special damages alleged in the slander case. And, as submitted by the court in its charge, there seems to be no reason to believe

that the verdict was in any degree affected by the fact of there being two actions, for it was stated, in substance, more than once that in case plaintiff was entitled to recover, she could recover as general damages such an amount "as you find she was damaged by reason of any defamation of her character because of the alleged slanderous statements made of and toward her. That is the only thing that you can take into consideration in determining the general damages. Then when you come to this portion of the verdict which reads: 'And we assess his special damages in the sum of blank dollars,' in that blank space you will insert such amount as you may find would justly compensate Patricia Gendler for the damages she has sustained resulting directly and proximately from the occurrence that took place there on the evening of the 18th of August. These two elements are what you determine. In the first one, on the general damage question, what damage has she sustained to her character by reason of these alleged slanderous statements, if they were made, by Mr. Burris. On the proposition of special damages because of this claim on the part of the plaintiff that as a direct result of the shock she then sustained that she had this affliction, concerning which testimony has been received, to what extent has she been damaged by reason of that affliction, if she has it." We fail to see how defendant could be prejudiced by the one verdict. If Burris was guilty of any actionable wrong toward plaintiff it was by his words indirectly accusing her of the theft of the barrette. An ingredient in that accusation was the act of snatching the article from her hand and retaining it. This was the whole of the slander action and gave a foundation for both the general and the special damages pleaded therein. By so submitting special damages flowing from slander, the general damages pleaded in the assault action were virtually withdrawn, and thereby the assault eliminated except insofar as the evidence thereof bore upon the slander.

After verdict, defendant moved for judgment *non obstante* in each action separately, and assigns as error here the denial of judgment. Defendant had no right to move for judgment notwithstanding the verdict in the court below for there was no motion

for directed verdict at the close of the testimony. 2 Mason Minn. St. 1927, § 9495. 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 5079, cites numerous authorities that judgment notwithstanding the verdict cannot be had unless there was a motion for a directed verdict at the close of the testimony. It is true that when plaintiff rested defendant also rested for the purpose of making the motions. The motions were made and denied. Then defendant was permitted to open the case, and its defense went in, as well as plaintiff's rebuttal evidence. There was no renewal of the motion at the close of the testimony. Johnson v. Hegland, 175 Minn. 592, 222 N. W. 272, presented an identical situation, and we held that the defendant was not in position to move for judgment notwithstanding the verdict. But aside from that, we think plaintiff was clearly entitled to go to the jury in her action for slander, both upon general and special damages pleaded; and for the court to have directed a verdict for defendant in the assault action would have precluded all right to the special damages alleged in the slander action.

The judgment is affirmed.