**Arthur W. STOKES, Plaintiff and Appellant,**

v.

**Walter C. DAILEY, Defendant and Respondent.**

**No. 7825.**

Supreme Court of North Dakota.

July 10, 1959.

Rehearing Denied July 30, 1959.

Cyrus N. Lyche and Duane R. Nedrud, Grand Forks, for plaintiff and appellant.

Nilles, Oehlert & Nilles, Fargo, for defendant and respondent.

STRUTZ, Judge.

This case has previously been before this court on an appeal from a judgment of dismissal, which dismissal was on the ground that the plaintiff had completely failed in his proof, N.D., 85 N.W.2d 745. A new trial was granted the plaintiff on such appeal on the ground that the trial court's dismissal of the action on defendant's motion for dismissal, at the conclusion of the plaintiff's case, was prejudicial error.

The case thereafter was again tried to a jury in the district court of Grand Forks County. The jury returned a verdict dismissing the plaintiff's complaint, and judgment was entered on such verdict. Plaintiff then moved for a new trial. The trial court entered its order denying plaintiff's motion for a new trial. This appeal is from the order denying motion for new trial and from the judgment of dismissal.

The plaintiff, a licensed and practicing attorney for many years in the city of Grand Forks, consulted the defendant, a licensed physician and general practitioner in the same city, in April of 1952. The plaintiff was suffering from a skin irritation which he had endured for some years. This irritation at times became worse, and was especially evident in the vicinity of his armpits. The defendant prescribed Histadyl with Surfacaine in the form of an ointment put up in a tube.

When the plaintiff received the prescription, he used it only once. That application caused a severe burning sensation and, after the one application, he abandoned the prescription and returned to the use of rubbing alcohol, Pragmatar, and Stag Cologne, which he had been using without medical prescription for some time.

Some eighteen months later, in November of 1953, the plaintiff ran out of his own remedies so he again tried the Histadyl with Surfacaine which the defendant had prescribed in April of 1952. Again it caused a burning sensation. Nevertheless, he used it a second time. These applications caused the irritation to spread. The plaintiff then continued using Pragmatar, Stag Cologne, and rub-

bing alcohol and discontinued the use of the defendant's prescription.

Less than a month thereafter, on December 14, 1953, the plaintiff went to the clinic for a physical checkup without a definite appointment. He arrived at the clinic just at noon and was told by the defendant that the defendant did not have the time to give him a physical examination at that time. The plaintiff then asked the defendant to take a look at his arms, which were bothering him. The plaintiff and the defendant stepped into a small office and the defendant looked at the plaintiff's arms and said, "I will give you a prescription."

The plaintiff claims that he then advised the defendant: "Don't give me the same stuff you gave me before because that drives my skin wild." The defendant denies that the plaintiff made any such statement. In any event, the defendant did write out a prescription. The plaintiff had the prescription filled and went to his home where he applied it under his arms. Again, according to the plaintiff's testimony, he experienced a burning sensation after the application of the prescription. Eight hours later, however, the plaintiff applied contents of the second prescription once more, but with the result that such application caused the irritation to spread.

The irritation under the plaintiff's arms became worse, and the following day the plaintiff saw the defendant at the clinic. Later in the same day, the defendant stopped to see the plaintiff at his home and then asked the plaintiff to return to the defendant's office in the afternoon, where two hypos were given to him.

The plaintiff then was taken home and went to bed. Around three o'clock the following morning, while the plaintiff was in the bathroom, he lost consciousness. He thereupon was taken to the Deaconess Hospital, where he remained as a patient until the 25th day of December, 1953, when he went home for Christmas. He again entered the hospital on January 1, 1954,

and on January 7 he left Grand Forks for St. Paul, Minnesota, where he consulted Dr. Francis Lynch, a skin specialist. He entered Miller Hospital in St. Paul on January 7, and remained in the hospital until January 21, during which time he was under the care of Doctor Lynch. On January 21 the plaintiff returned to Grand Forks and on the 28th of January, in the company of his wife, he left Grand Forks for Florida. That trip was taken at the suggestion of the plaintiff and concurred in by his physician, Doctor Lynch. Plaintiff remained in Florida until March 5, 1954, when he started back for North Dakota. On the return trip, on March 10, the plaintiff stopped at St. Paul to see Doctor Lynch, and the next day he returned to his home in Grand Forks. He resumed work in his law office on March 15, in a much improved condition.

Doctor Lynch testified that, in his opinion, the aggravation of plaintiff's skin affliction was caused by contact with Surfacaine. He further testified that giving a prescription containing Surfacaine without giving a patch test was in conformity with good medical practice.

On this record, the jury dismissed the plaintiff's complaint, and the case now is before this court on an appeal from an order denying the plaintiff's motion for a new trial and from the judgment.

■ Generally, in' the absence of a special agreement, a physician does not guarantee or insure a good result, or that he will effect a cure. 70 C.J.S. Physicians and Surgeons § 47, p. 954; Ness v. Yeomans, 60 N.D. 368, 234 N.W. 75.

■ A physician's implied obligation arising from his employment is only that no injury shall result from any want of care or skill on his part. Schoening v. Smith, 59 N.D. 592, 231 N.W. 278.

In this case, plaintiff alleges negligence on the part of the defendant in not using proper care and skill and in not determin-

ing whether the plaintiff was allergic to Surfacaine before prescribing it for plaintiff's affliction.

■ The question of negligence is one for the jury where there is evidence tending to show failure to exercise the requisite professional skill and care in treating and caring for the patient or in diagnosing his case. Here the jury has passed on that question. Unless appellant shows reversible error, the verdict of the jury will not be disturbed.

The appellant alleges numerous errors on his appeal, and such allegations of error may be summed up in the following:

1. Failure of the trial court to grant the plaintiff's motion to withdraw from the consideration of the jury the question of contributory negligence, claiming there was no evidence of contributory negligence in this case.

2. Insufficiency of the evidence to justify the verdict for the defendant.

3. Misconduct of defendant's counsel and improper argument by defendant's counsel to jury, including prejudicial error in allowing counsel for the defendant to read from the court's instructions during his argument to the jury.

4. Errors of law in the court's ruling on the evidence and in instructing the jury.

■ One of the more serious questions raised by the appellant is on the court's instructing the jury on contributory negligence. Clearly, if there were no evidence of contributory negligence on the part of the plaintiff, instructing the jury on that question was error which could well have prejudiced the jury against the plaintiff. The record discloses that the plaintiff produced evidence to show that, in November of 1953, a few weeks prior to December 14, the day on which the plaintiff received a second prescription from the defendant, the plaintiff had used the defendant's first

prescription on two occasions. In both instances the result was a burning sensation and a spreading of his ailment. The burning sensation in itself is not significant. Many treatments, which heal, cause a burning sensation in the process. But the fact that the first prescription had caused the plaintiff's affliction to spread is, we believe, significant. The result of its use on those two previous occasions was such that the plaintiff immediately discontinued using that prescription. Yet, when the plaintiff returned to the defendant for a "checkup" on December 14, 1953, just a short time after his experience with the prior prescription given by Doctor Dailey, he went to the doctor's office at noon without a definite appointment. He was informed by the defendant that the defendant could not examine him at that time. The plaintiff then requested the defendant to "look at my arms, they are bothering me some."

It was then that the plaintiff claims to have told the defendant, when the defendant stated that he would give a prescription for the ailment: "Don't give me the same stuff * * * you gave me before because that drives my skin wild." The defendant denied that any such warning was given by the plaintiff. It is significant that the plaintiff, in his argument before this court, admitted that he was not sure the defendant had heard this warning although he said it loud enough so defendant should have heard.

Surely the plaintiff, who used the first prescription shortly before receiving the second prescription, and who had experienced a spreading of his ailment by reason of such use, should have made certain that the defendant did not give him more of the same. Yet, with that recent experience in mind, the plaintiff took the second prescription which was identical to the first in appearance, put up in the same type of tube, and containing the same type of ointment, and used it several times and until it caused the irritation from which plaintiff was suffering to spread badly.

The treatment given to the plaintiff by the defendant was proper in the ordinary case for treating an affliction such as the plaintiff's. The plaintiff complains, however, that the defendant should first have determined whether the proposed treatment could safely be given to him, and that the defendant should have determined this by means of a patch test. The evidence given by plaintiff's own expert, Doctor Lynch, shows that the treatment given the plaintiff by the defendant was proper even though no patch test was used to determine if the plaintiff was allergic to the ointment prescribed. The evidence further clearly shows that the defendant had no opportunity to determine what was causing the plaintiff's affliction, and that the lack of such opportunity to discover what was causing the plaintiff's trouble was due to the plaintiff's own action in going to the clinic at such an inopportune time as noon and in requesting that the defendant "look at my arms, they are bothering me some," even after the defendant had informed the plaintiff that he did not have the time to give the plaintiff a checkup then.

■ Under these circumstances, surely there is ample evidence on which the jury might find the plaintiff guilty of contributory negligence. The question of the negligence of the defendant and the contributory negligence of the plaintiff were both questions on which reasonable men might disagree, and therefore were both questions for the jury. In this case the jury has passed on the question of negligence and has dismissed the plaintiff's complaint.

■ Where honest and intelligent men may fairly differ in their conclusions from the evidence upon any material fact in the case, it is for the jury to pass on such evidence. Schantz v. Northern Pacific Railway Co., 42 N.D. 377, 173 N.W. 556, at page 557; Stokes v. Dailey, N.D., 85 N.W. 2d 745; Terry v. Muller, 8 Cir., 190 F.2d 170.

■■ The plaintiff next raises the question of the insufficiency of the evidence to sustain the verdict for the defendant. The evidence in this case is squarely conflicting. The testimony on the part of the plaintiff was that the plaintiff had warned the defendant against a similar prescription to that given to him previously. The defendant denied this. When the plaintiff called at the clinic at noon on the 14th day of December, 1953, he went for a checkup, not for treatment for his affliction. He arrived there at an hour when he should have known that the defendant could not give him a careful examination. When the defendant told him that he could not possibly examine him at that time, the plaintiff asked the defendant to look at his arms, which were bothering him. Plaintiff knew, or should have known, that any examination under those circumstances would be, at best, cursory and superficial. In spite of the fact that the plaintiff only asked the defendant to look at his arms, the plaintiff now contends that the defendant should have given him a patch test to determine whether plaintiff was allergic to the prescription the defendant intended to give. Under the circumstances, we do not believe the defendant was obligated to give a patch test since he was asked only to look at the plaintiff's affliction. We believe it is very significant that the plaintiff's own expert, Doctor Lynch, testified that the giving of the prescription by the defendant to the plaintiff without the giving of a patch test was·in conformity with good medical practice. His testimony is as follows:

"Q. Now was the giving of such a prescription, that is, of Surfacaine and Histadyl, this Eli Lilly & Company prescription cream, was it in conformity with the rules of the medical profession without first giving a patch skin test to Mr. Stokes?

"A. Yes, sir."

Surely, where the plaintiff's own medical expert testified that the giving of the pre-

scription without first giving a patch test is in conformity with the rules of the medical profession, the plaintiff cannot now complain because the jury failed to find the defendant guilty of negligence for failure to give him a patch test under the circumstances under which the defendant examined the plaintiff in this case.

There is, therefore, very substantial evidence in this case to sustain the verdict. This court has held that an order denying a motion for a new trial, which is based upon the allegation of insufficiency of the evidence to justify the verdict, will not be disturbed when it appears that there is substantial conflict in the testimony. De Rochford v. Bismarck Baking Co., 70 N.D. 523, 296 N.W. 188; Butler v. Aetna Insurance Co., 64 N.D. 764, 256 N.W. 214.

The motion for new trial on the ground that the evidence does not justify the verdict is always addressed to the sound, judicial discretion of the trial court, and the order made on such motion will not be reversed by this court unless the record discloses a clear case of abuse of discretion. Haser v. Pape, 78 N.D. 481, 50 N.W.2d 240; Crossen v. Rognlie, N.D., 68 N.W.2d 110; Otter Tail Power Co. v. Malme, N.D., 92 N.W.2d 514; Johnson v. Patterson, 67 N.D. 132, 270 N.W. 97. And where there is substantial conflict in the evidence, the appellate court will not interfere with the trial court's rulings on a motion for new trial in the absence of showing of such abuse. Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64.

We next will consider plaintiff's assignment of error based on alleged misconduct of counsel and prejudicial error in allowing counsel for the defendant to read from the court's instructions during his argument to the jury, and alleged misconduct based on improper argument. The record does not disclose that the trial court was given an opportunity to exercise its discretion as to whether the alleged objectionable conduct of defendant's counsel

was prejudicial and to pass upon its effect. The plaintiff's objection to conduct of counsel seems to be based largely on the fact that defendant's counsel withdrew objections at the trial which he previously had interposed at the taking of the deposition of Doctor Lynch. This court has held that error cannot be predicated on the misconduct of counsel in the trial of a case unless the trial court is first given an opportunity to exercise its discretion as to whether such alleged objectionable conduct is prejudicial and to pass upon its effect. Leach v. Nelson, 50 N.D. 538, 196 N.W. 755; Schnoor v. Meinecke, 77 N.D. 96, 40 N.W.2d 803.

Without passing on the question of whether it would be error for defendant's counsel to read from the court's instructions during his argument to the jury, or whether defendant's counsel was guilty of misconduct because of improper argument to the jury, we point out that there is absolutely no reference to what was said or done in the record before us. We have carefully examined the transcript, the stipulation settling the statement of the case, and the certificate settling statement of the case and have found nothing to show that defendant's counsel did read from the instructions in his argument to the jury, or that there was any objection by plaintiff's counsel to such reading from the instructions, if in fact this was done. In fact, the only indication before this court that this actually was done is the plaintiff's specification of error, claiming prejudicial error was committed in allowing the defendant's counsel to read from the court's instructions during his argument.

This court repeatedly has held that, where a party predicates error on the attorney's argument to the jury, he must present a record affirmatively showing the objectionable language used. Broste v. Farmers Union Co-op Elevator Co., N.D., 71 N.W.2d 55; Tice v. Mandel, N.D., 76 N.W.2d 124; Howlett v. Stockyards National Bank, 48 N.D. 933, 188 N.W. 172;

Morton v. Stensby, 59 N.D. 784, 232 N.W. 6.

This court cannot find that counsel for the defendant was guilty of misconduct in his argument where there is no certified record as to what was said or done. Morton v. Stensby, 59 N.D. 784, 232 N.W. 6.

■ The plaintiff also claims error on improper rulings of the trial court on the admission and exclusion of certain evidence. "In an action for malpractice, any competent evidence which tends to prove or disprove any material fact in issue is admissible, and evidence which has no tendency to establish or negative the issues joined is inadmissible." 70 C.J.S. Physicians and Surgeons § 62c (1), p. 996.

■ On the question of whether the defendant knew what plaintiff's allergies were, the plaintiff asked the defendant the following question: "Have you learned since that time of anything he is allergic to?"

The defendant objected to this question on the ground of immateriality and on the ground that no proper foundation had been laid. The court sustained the objection, and we are now to determine whether sustaining the objection is error.

What the defendant subsequently learned from other sources as to the cause of plaintiff's affliction would, in our opinion, not be material to the issues in this case. Any attempt to show what the defendant might have learned after the date on which he was acting as doctor in treating the plaintiff would be immaterial, at least unless a foundation were laid showing the evidence to be material. In sustaining the objection to the plaintiff's question, the court said: "I can understand the question might be material if there is a previous foundation or previous evidence to connect it up. I will sustain it at this state of the record." We believe the court did not err in sustaining the objection as to what the defendant subsequently, and after defendant's discharge as doctor for the plaintiff, learned from other sources as to the cause of the plaintiff's affliction.

■ The plaintiff also claims error because the court sustained an objection to the following testimony given by the plaintiff:

"Q. Did you say anything to him with regard to taking this skin patch test?

"A. Yes, sir.

"Q. What was that?

"A. I asked him if he would take or take care of the loss and the pain and suffering * * *"

The court then sustained defendant's objection as to plaintiff's answer as being not responsive and as being self-serving. The plaintiff was, however, allowed to continue to testify in regard to his conversation with the defendant. The defendant's objection was sustained only as to the plaintiff's speech as to his loss and his pain and suffering.

The court did not err in sustaining the defendant's objection to the answer in the form in which the plaintiff gave it.

We have examined other assignments of error in the reception or the failure to receive evidence, and we find no reversible error.

The plaintiff further alleges certain errors committed by the court in instructing the jury. These errors are divided by the plaintiff into two general groups: (1) errors in the instructions given to the jury and (2) errors in refusing to give instructions requested by the plaintiff.

■ The trial court has the duty to fully and fairly instruct the jury on law governing issues involved in the trial of the case, and may refuse requested instructions when the matter already is fully and fairly covered by a charge given even though the requested instruction correctly states legal principles. That is especially

true when the requested instructions are mere amplification or are of a more detailed statement of the law and facts already charged and tend to give undue emphasis to particular portions of the evidence. Killmer v. Duchscherer, N.D., 72 N.W.2d 650. If the plaintiff objects to any portion of the proposed instructions where the court, before giving such instructions, asks for exceptions to the instructions to be noted, then the plaintiff must note all exceptions to the instructions prior to the time they are given. Rule 51, Sec. C, N.D. Rules of Civil Procedure.

▇▇▇ In the instant case, the only objection made by the plaintiff to the instructions as submitted to counsel, other than the objection to an instruction on the question of contributory negligence with which we have already dealt, was in the following language:

"May the record show we have only one objection to the instructions as given, and that is * * * I believe it is not complete enough, it does not refer within the instructions to the due care required of the physician.

"The Court: Is there any more instruction on care necessary more than was set out in page 6?

"Mr. Nedrud: We think it should be set out where it says 'in exercising his best judgment' and 'he selects one of the approved methods, which later turns out to be a wrong selection.'

"The Court: State your objection.

"Mr. Nedrud: I am just stating that with regard to page No. 7, your Honor. I will not argue.

"The Court: Please make it clear and distinct.

"Mr. Nedrud: We object to the instruction on page 7. It does not go far enough into the care required by the physician in exercising his best judgment.

"And we object to the proposed instructions on the ground that they fail to incorporate all our requested instructions, * * *

"The Court: They have all been refused and that record is all right."

Let us now examine the instructions which the court did give on the matter of due care required of a physician to see if the question of due care was fully covered. The court instructed the jury in part as follows:

"By undertaking professional service to a patient, a physician impliedly represents that he possesses, and it is his duty to possess, that degree of learning and skill ordinarily possessed by physicians of good standing, practicing in the same locality and under similar circumstances. It is his further duty to use the care ordinarily exercised in like cases by reputable members of his profession practicing in the same locality and under similar circumstances and to use reasonable diligence and his best judgment in the exercise of his skill and the application of his learning, in an effort to accomplish the purpose for which he is employed. A violation of any of those duties is a form of negligence that we call malpractice."

The court further instructed the jury:

"In determining whether defendant's learning, skill and conduct fulfilled the duties imposed on him by law, as they have been stated to you, you are not permitted to set up arbitrarily a standard of your own. The standard, I remind you, was set by the learning, skill and care ordinarily possessed and practiced by others of the same profession in good standing, in the same locality, and at the same time."

This was a correct statement of the degree of skill and care required of physicians in North Dakota. Hanson v. Thelan, 42 N.D. 617, 173 N.W. 457.

If the whole instruction as given by the court, taken together, states the law correctly, then there is no error. Axford v. Gaines, 50 N.D. 341, 195 N.W. 555.

We have examined the instructions as given by the court and we believe that such instructions are clear, accurate, and concise and that they fully cover the claims made by both sides of the case. Mousel v. Widicker, N.D., 69 N.W.2d 783, 53 A.L.R.2d 884.

No reversible error having been shown by appellant, the order denying motion for new trial and the judgment of the district court are affirmed.

SATHRE, C. J., and TEIGEN, BURKE and MORRIS, JJ., concur.