Gordon BARTHOLOMAY, as Surviving Husband of Diane Bartholomay, deceased, Gordon Bartholomay, as Surviving Father of the Unborn Child of Diane Bartholomay, deceased, Vickie Lynn Bartholomay, by her Next Friend, Gordon Bartholomay, Jeffrey Bartholomay, by his Next Friend, Gordon Bartholomay, and Gordon Bartholomay, Individually, Plaintiffs and Respondents,

v.

ST. THOMAS LUMBER COMPANY and John R. Quam, Defendants and Appellants.

Civ. No. 8245.

Supreme Court of North Dakota.

Dec. 19, 1966.

Rehearing Denied Feb. 14, 1967.

282

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for plaintiffs and respondents.

Stokes, Vaaler, Gillig, & Warcup, Grand Forks, for defendants and appellants.

STRUTZ, Judge. (On reassignment).

The plaintiff, Gordon Bartholomay, brings this action for himself and for his two minor children for the wrongful death of his wife, Diane, the mother of said children. The action was brought under the provisions of Section 32–21–03, North Dakota Century Code, which provides for the bringing of an action for wrongful death. He also brings an action as next friend of the two minor children for personal injuries which his children suffered in the accident.

The record discloses that the plaintiff was a graduating senior in accounting at the University of North Dakota. His wife, a college graduate, had just completed the school year as a teacher in the Grand Forks school system. The defendant Quam resided at St. Thomas, North Dakota, and was employed by the defendant St. Thomas Lumber Company of that city.

On July 14, 1961, the defendant Quam, on business for his employer, left St. Thomas at about ten o'clock in the forenoon with a two-ton International truck, intending to drive to Fargo. With him was one Robert Sturlaugson. When they reached Grafton, Sturlaugson purchased a six-pack of beer, and each of them consumed three bottles while driving from Grafton to Grand Forks. They then stopped at the Bronze Boot in Grand Forks, where Quam admits consuming one vodka sour before they ate dinner. After dinner, they each consumed two more vodka sours in a matter of fifteen to twenty minutes. Sturlaugson then purchased another six-pack of beer which they took with them into the truck. The defendant admits that he had consumed another 1⅓ bottles of this six-pack as they drove along the highway prior to the happening of the accident.

The plaintiff and his family left Grand Forks about noon. His wife was sitting on the right side of the front seat, holding their 22-month-old daughter on her lap. The record also shows that the wife was eight months pregnant with child. The three-year-old son was riding in the back seat.

When the plaintiff reached a point on the highway about 2½ miles north of Grandin, he saw the defendant's truck stop on an approach on the west, or right, side of the highway. As they neared this truck, it suddenly and abruptly was backed onto the highway, and then was driven in a southerly direction toward Fargo.

The plaintiff passed the truck and then, because it was raining, he slowed to about forty miles an hour. Another car, also proceeding in a southerly direction, was about one block ahead of the plaintiff. There also was some oncoming traffic some distance to the south.

Just before the accident occurred, the plaintiff looked into his rear-view mirror and saw the defendant's truck rapidly approaching from the rear. To warn the driver behind him that he was going to slow down some more, the plaintiff tapped his foot on the brake pedal so that his brake lights would give such warning. He again looked into the rear-view mirror and saw the truck very near. He testified:

"That truck was sliding towards me, and that is all I recall."

The defendant Quam admitted that he was driving, drinking, and visiting as he proceeded in a southerly direction, right up to the time of the accident. As he turned his attention from his passenger on one occasion, he suddenly realized that he was closing in on the car ahead of him very fast. He knew that if he didn't do something, he would collide with the rear of that car. There were oncoming vehicles in the northbound lane which prevented him from passing to the left of the plaintiff's car, so he swung his truck toward the right ditch. The truck went into a clockwise skid in the southbound lane and, while thus skidding out of control, the defendant lost sight of the plaintiff's car. He did not, however, feel any impact with the plaintiff's car.

The defendant's passenger testified that, as they were traveling in a southerly direction, visiting, he first saw the tail light of the plaintiff's car when it was only fifty to seventy-five feet in front of them, and the defendant's truck was skidding and out of control. He did not feel or hear any impact, either.

The record also shows that, as the defendant's truck closed the gap between it and the plaintiff's car, the plaintiff's vehicle suddenly came out of the southbound lane and went squarely across the northbound lane "just like it was shot out of there." As it came into the northbound lane, it was squarely across the lane of travel and about ten feet in front of a northbound truck driven by a Mr. Williams, who struck the plaintiff's vehicle broadside. This northbound truck at no time hit the rear of the plaintiff's car. Another car which was following the northbound truck then hit the rear of the Williams truck, but did not strike the plaintiff's car.

The record further shows that the sheriff, who aided in the investigation of the accident, examined the left rear outside dual on the defendant's truck and found a flattened portion four inches in length. On that flattened portion he found some gold, silver, and chrome material. This area of the rim was found to be cleaner that the balance of the rim. He also examined the plaintiff's rear bumper and there found a dent in the bumper. The area of this dent had no road oil or dirt on it, compared with the balance of the bumper. He also found glass or plastic material in the right rear tail light of the plaintiff's car, similar to the material found in the left rear dual of the defendant's truck.

The sheriff also testified that, in a conversation with the defendant Quam in the sheriff's office on the evening of the accident, he asked the defendant if he had struck the plaintiff's car and was told:

"I don't think I struck the Bartholomay car but I could have possibly."

One of the highway patrolmen who helped in the investigation testified that, about forty feet north of the gouge in the highway where the impact between plaintiff's car and the northbound truck had occurred and in the west, or southbound, lane of the highway, he found four pieces of red plastic which matched the plastic tail light lens of the right rear tail light on the plaintiff's automobile which had been broken. This witness also testified

that he noticed a strong odor of alcohol in the defendant's cab, smelled alcohol on the defendant's breath, and that the defendant's eyes appeared to be glassy, and that from his appearance the witness believed the defendant was under the influence of intoxicating beverages. A second patrolman, Wright, who also assisted in the investigation, stated that he found the defendant's face flushed and his eyes glassy, and that he had a strong odor of alcohol and was definitely under the influence. He also stated that the dent in the plaintiff's right bumper was immediately below the broken red plastic tail light.

The record further shows that a blood test for alcohol was taken of the defendant Quam's blood some two hours after the accident, and that such test disclosed that the defendant's blood, at the time of the test, had an alcoholic content of ten hundredths of one per cent by weight.

The wife of the plaintiff, mother of the two minor children, Vickie and Jeffrey, was killed in the accident. The jury, in the trial for damages for such wrongful death, returned a verdict for the minor children for the wrongful death of their mother, but failed to return any verdict for the husband for the wrongful death of his wife. It also returned a verdict for each of the minor children for personal injuries which they had suffered in the accident.

Thereafter, the defendants made motions for judgment notwithstanding the verdict or for a new trial, which motions were denied. This appeal is from the orders denying motions for judgment notwithstanding the verdict or for new trial, and from the judgment.

Numerous issues are raised on this appeal, which the defendants support by many specifications of error. We will consider all of such issues raised, the determination of which are necessary to a decision of this appeal.

The first issue to which we will give our attention is that the court erred in denying

defendant's motion for a mistrial for misconduct of the plaintiff. The record shows that the two minor children, Vickie, aged twenty-two months, and Jeffrey, aged three years, were not present during any part of the trial although they themselves were parties to the suit. On the morning when the case was to be argued and submitted to the jury, the attorney for the defendants found the plaintiff walking into court with the two children. In chambers, and out of the presence of the jury, the defendants objected to the presence of the children in the courtroom. The trial judge, in passing on the motion to have the children excluded from the courtroom, stated:

"THE COURT: I will sustain the objection and counsel for plaintiffs may note their objections. It would seem to this Court that the children not having been present in the courtroom up until this point, when the summation is about to commence, that no useful purpose could be served by having them present during the final argument. The Court makes no objection to having them in the courtroom, but not to be seated with the plaintiff Gordon Bartholomay at the counsel table. The children will be removed from their chairs by their father and placed back in the courtroom, * * *"

Following the opening argument of the plaintiff, the parties again retired to chambers where the following proceedings took place:

"MR. STOKES: At this time the defendant moves the Court for a mistrial in this action on the ground and for the reason that prior to the commencement of arguments or summation, a proceeding was had in chambers with respect to the plaintiffs' bringing for the first time into this court the children involved in this action, at which time the Court ordered that he would not order the children out of the courtroom but that they should be seated in the rear of the courtroom. That was not done.

When we came into the courtroom we found the children sitting in the front row. Thereafter, at recess, during the opening summation by Mr. Magill, as counsel for plaintiff, the children still being in the front seat when the jury marched in, the father was sitting with the children and the jury saw that, and counsel for the defendant was aware that the jury had been looking at the children during the argument, and we feel it was in disobedience to the direction of the Court, and these actions have been prejudicial."

On this record, the defendants moved for a mistrial. The motion was denied by the court, and the defendants contend that the denial of the motion was error. In their brief, the defendants state:

" * * * and the Court sustained the objection and ordered that the children should be removed from the counsel table but that they might be seated at the rear of the courtroom; that the counsel for the plaintiffs, in violation of such instructions, seated the children in the first row immediately behind the railing separating the audience from the counsel table at a distance of approximately five feet from the counsel table and in clear view of the jury; * * *"

We do not believe that counsel for the defendants states the facts correctly. He maintains that the trial court ordered the children seated at the rear of the courtroom, which wasn't the order of the trial court, at all. The trial court, in his order, stated:

" * * * The children will be removed from their chairs by their father and placed back in the courtroom, * * *"

They were placed back in the courtroom, although in the first row immediately behind the railing. So the action of the father in placing the children in the main portion of the courtroom, but in the front row, was not contrary to the order of the trial court. The only question we must determine on this specification is whether the bringing of the children into the courtroom at all, under the circumstances, was error and prejudicial.

Ordinarily, a trial court has discretion to determine whether such persons may be present or should be excluded from the courtroom during the trial. Here, we have a trial being conducted for wrongful death, and these children were vitally interested in the results of the action. But they were too young to testify or to even understand the nature of the proceedings. The decision must be left to the sound discretion of the trial court in each case. Here, in addition to being children of the deceased, these children were actual parties to the suit. Each was personally interested in the action, for each had suffered personal injuries. The trial court's refusal to exclude these children from the courtroom did not, in our opinion, constitute an abuse of discretion. 88 C.J.S. Trial § 39, p. 98.

We will now consider the defendants' specification contending that the trial court erred in denying their motion for judgment notwithstanding the verdict or for a new trial.

Before a motion for judgment notwithstanding the verdict can be granted, it must be conclusively established that the moving party is entitled to judgment as a matter of law. Aetna Indemnity Co. v. Schroeder, 12 N.D. 110, 95 N.W. 436; Linington v. McLean County (N.D.), 146 N.W.2d 45.

On motion for judgment notwithstanding the verdict, the evidence must be considered most favorably to the party in whose favor the jury returned a verdict. And, before such motion can be granted by the trial court, the record must show that the verdict which was returned was wholly unjustified by the evidence. We have carefully examined the record in this case and we find that there was substantial evidence to sustain the jury verdict. The court

therefore properly denied the motion for judgment notwithstanding the verdict.

■ What we have said in regard to the motion for judgment notwithstanding the verdict applies, in part, to the motion for new trial. However, such a motion for new trial is addressed to the judicial discretion of the trial court, and its decision on such motion will not be reversed by this court on appeal unless an abuse of discretion is clearly shown. We have examined the record carefully and, on the facts disclosed by that record, we find that the trial court did not abuse its discretion in denying the motion for new trial. The evidence fully sustains the jury's verdict for the plaintiffs. There was substantial evidence to support the plaintiffs' claims, and the verdict was not based on guess or speculation, as contended by the appellants. In fact, we believe that the overwhelming weight of the evidence was in favor of the plaintiffs' claims. The denial of the defendants' motion for a new trial clearly was not error.

■ We next consider the defendants' contention that the damages awarded to the plaintiffs were excessive and were given under the influence of prejudice and passion. Surely counsel cannot be serious when they suggest that a verdict of $32,000 awarded to a 22-month-old girl who has over sixteen years of life before reaching majority, and her three-year-old brother, who has eighteen years to live before reaching his majority, for the wrongful death of their mother, is excessive. We do not believe that this contention merits any extended argument and will merely state that, in our opinion, the verdict was not excessive.

The next contention of the defendants is that the court erred in entering judgment in favor of the minor children for the death of their mother, for the action for such wrongful death was brought by the father of the plaintiffs and not by the minor children. In other words, has the plaintiff proved a cause of action for the minor children where he brings the action as the surviving husband of the deceased wife for her wrongful death in a representative capacity and where the jury finds such plaintiff husband guilty of contributory negligence, but brings in a verdict for the minor children for the wrongful death of their mother where such children do not bring the action in their own name?

■ Our law provides for the recovery of damages for wrongful death, and also provides who may bring the action. Section 32–21–03, North Dakota Century Code, allows actions for wrongful death to be brought by the following persons, in the order named:

"1. The surviving husband or wife, if any;

"2. The surviving children, if any;
* * *."

In this case, the surviving husband brought the action. At the time, the children were minor children of tender years. When he brought the action, the rights of the children were included in his lawsuit, for our wrongful-death statute goes on to provide that the person entitled to bring the action may compromise it or the right thereto, and such compromise is binding on all persons who are entitled to share in the recovery. Thus the father, by bringing the action, foreclosed any action being brought by anyone else on behalf of the minor children.

This court has held that an action in favor of an infant for the wrongful death of a mother caused by another should have been brought in the name of the infant by the guardian and not in the name of the guardian himself. Willard v. Mohn, 24 N.D. 390, 139 N.W. 979.

But here we have an entirely different situation. Here, the father had the right to bring the action under our statute. And when he did so, the children had no additional right of action under that statute because the action had been brought by

the father as surviving husband. Any right of action which the children had for the wrongful death of their mother was merged in the father's action as the surviving husband of the deceased. Had the children, after the commencement of the father's action, started a separate action, it would have been subject to dismissal.

█ Now, since the children could not have brought an action for the wrongful death of their mother after the father had started a wrongful-death action, are they to be barred from recovery because the jury did not award any damages to the father, as the surviving husband of the deceased, because of his contributory negligence? We think not. The husband and father had the right, under our statute, to institute the suit for wrongful death in his own name for damages for the wrongful death of the wife and for the wrongful death of the mother of the children without being appointed as a general guardian or guardian ad litem for such minor children. The fact that the jury found that the father had no cause of action for the wrongful death of his wife did not destroy the right of recovery which the children had. The contributory negligence of the father did not in any way destroy the right of the minor children to recover for the wrongful death of their mother, because the contributory negligence of the father was not imputed to the children as guests in the car. Where a father brings an action for the wrongful death of his wife, the mother of minor children, and the father is found to have no right of recovery by reason of his contributory negligence, the right of the minor children to recover for the wrongful death of their mother in such action is not destroyed, and a verdict for the minor children for the wrongful death of their mother, where such action was brought by the father as surviving husband, is valid, and a judgment entered on such verdict is proper.

In this case, we also find that the actions for the personal injuries of the minor chil-

dren were brought by their father as next friend without being appointed as guardian ad litem. Before the adoption of our rules of civil procedure, our law provided:

"28–0204. *Infant Must Appear by Guardian.* When an infant is a party to an action, he must appear either by his general guardian or by a guardian appointed by the court in which the action is prosecuted. A guardian may be appointed to represent an infant in any case when the court in which the action is prosecuted deems it expedient, even though the infant may have a general guardian and may have appeared by him."

However, Section 28–0204 of the North Dakota Revised Code of 1943, quoted above, was superseded by Rule 17(b), North Dakota Rules of Civil Procedure. This rule reads, in part:

"*Infants or incompetent persons.* Whenever an infant or incompetent person has a representative, such as a general guardian, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. * * *"

█ Thus an action on behalf of an infant may be brought by his general guardian or, if he has no representative, *such action may be brought by his next friend or guardian ad litem.* The purpose of having someone represent an infant is to protect the rights of such infant.

The portion of Rule 17(b), North Dakota Rules of Civil Procedure, under consideration in this action, was taken almost verbatim from Rule 17(c), Federal Rules of Civil Procedure. While we have not had occasion to pass on whether this rule makes the appointment of a guardian mandatory before an action can be brought on behalf of an infant plaintiff, a number of Federal courts have passed on this question under

the Federal rule. In Westcott v. United States Fidelity & Guaranty Co., 158 F.2d 20 (4th Cir. 1946), the court held that the word "or," as used in Rule 17(c), does not mean "and." The court held that the appointment of a guardian ad litem therefore was not mandatory where the action was brought by the next friend.

Here, the father, as next friend, brought the action, and we believe that under our present rule, 17(b), North Dakota Rules of Civil Procedure, such action was properly brought. Everything was done for the minor plaintiffs by their father and by their attorneys that could have been done if a guardian ad litem had been formally appointed. Therefore, the appointment of the father as such guardian ad litem would have been a mere formality, and such appointment is not required under Rule 17(b), North Dakota Rules of Civil Procedure.

The remaining specifications of error urged by the defendants in support of their appeal pertain to the denial of certain requested instructions, and claimed error in the giving of certain instructions by the trial court. In passing on the correctness of the court's instructions, and its refusal to give certain requested instructions, we must consider the instructions which were given as a whole, rather than the individual instructions or portions of such instructions. This court has held that the instructions to a jury must be considered in their entirety, and, where the effect of the whole instruction is to outline the issues in the case correctly and fairly, an isolated improper statement or omission will not be considered prejudicial error. Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11.

Therefore, although some instruction, standing alone, may be insufficient or even erroneous, if, when the charge which was given is considered as a whole, it correctly advises the jury as to the law, the error, if any, is cured. Ferderer v.

Northern Pacific Ry. Co., 77 N.D. 169, 42 N.W.2d 216.

We have examined all of the requested instructions which were denied, the denial of which the defendants claim was error. Some of such requested instructions were clearly improper and were rightly refused by the trial court. Some of them correctly state the law, but were not given by the trial court because the issues involved were covered by the court in somewhat different language. We have often held that, while a trial court has the duty to fully and fairly instruct the jury on the law governing the issues involved in a case, it need not give the requested instruction when the matter covered by such request is fully and fairly covered by the charge given, even though the requested instruction correctly states the law. Stokes v. Dailey (N.D.), 97 N.W.2d 676; Sheets v. Pendergrast (N.D.), 106 N.W.2d 1; Gravseth v. Farmers Union Oil Company of Minot (N.D.), 108 N.W.2d 785; King v. Railway Express Agency, Inc., (N.D.), 107 N.W.2d 509; Stetson v. Investors Oil, Inc. (N.D.), 140 N.W.2d 349; Haugen v. Mid-State Aviation, Inc. (N.D.), 144 N.W.2d 692.

Two of such requested instructions which were not given by the court were defendants' requested instructions Nos. 22 and 24. The defendants had requested that these instructions be given in the following language:

"DEFENDANT'S REQUESTED INSTRUCTION NO. 22

"I Instruct you that before you can bring in a verdict for the plaintiff against any of the defendants you must find that there was contact between the defendant's vehicle and the vehicle of the plaintiff, which caused the plaintiff to loose control of his automobile, or caused it to swerve to the east across the road into the path of the approaching Williams Truck. If you so fail to find, then

you must bring in a verdict for the defendants.

\* \* \* \* \* \*

·"DEFENDANT'S REQUESTED INSTRUCTION NO. 24

"You are instructed that the fact that the defendant's flat bed truck was skidding in a clock wise fashon [sic] on the highway though that may be some evidence of negligence, the same is not a proximate cause of the accident as I have defined proximate cause, unless you find that during such skidding or sliding, the defendant's truck came in contact with the plaintiff's automobile causing him to lose control of the same."

The defendants contend that, since the plaintiffs' cause of action is based entirely on the striking of the plaintiff Bartholomay's automobile by the defendant's truck, the only ground on which the plaintiffs can recover is if the evidence establishes that the plaintiff's vehicle was, in fact, struck by the defendant's truck. They further contend that the jury was entitled to an instruction clearly setting forth this legal principle, since the controlling issue in the entire case was whether or not the defendant's truck had struck the plaintiff's automobile.

The court fully, fairly, and correctly instructed on negligence, contributory negligence, and proximate cause. The evidence is such that there was absolutely nothing in the record to support the theory that there was no contact between the plaintiff's car and the defendant's vehicle. From the evidence in the record, the jury could not have found that there was no impact, even though the plaintiff did not testify that his car had been struck by the defendant's truck. The testimony of the defendant Quam was that he was not sure whether or not he had hit the plaintiff's car. On the day of the accident he told the sheriff, in answer to an inquiry as to whether he had hit the plaintiff's automobile: "I don't think I struck the Bar-

tholomay car but I could have ,possibly." He did not deny that there had been contact and thus make such contact an issue.

On the other hand, the evidence in the record is overwhelming to indicate that there was impact between the vehicles. With the defendant's truck skidding out of control right in back of the plaintiff's car, the plaintiff's car shot out from the southbound traffic lane, straight across the northbound traffic lane and just a few feet in front of an oncoming northbound truck. The record discloses that the rim of the left rear wheel on the defendant's truck had a flattened portion about four inches in length, and on that flattened portion the investigating officers found silver and chrome material, and discovered that there was chrome plating missing from the rear bumper of the plaintiff's car. The four-inch mark on the rim of the defendant's left rear wheel was cleaner than the balance of the ·rim, indicating that it had been rubbed clean by a blow. The plaintiff's rear bumper had a dent which had no oil or dirt on it such as covered the balance of the bumper.

██ Under this state of the record, the court could well have concluded that there was absolutely no evidence supporting the defendant's theory that there had been no contact or no impact between the two vehicles. Where the evidence is such that reasonable men must draw the same conclusion therefrom, the court had the right to find, as a matter of law, that there was contact or impact between the vehicles, and his failure to instruct the jury on the matter of contact therefore would not be error. Killmer·v. Duchscherer (N.D.), 72 N.W.2d 650.

██ We have, at the expense of much time and labor, carefully examined the more than 1,250 pages of transcript and the detailed instructions given to the jury in this case. We find, when considered as a whole, that the charge correctly advised the jury as to the law. We

further find that there was no error in anything that was done or omitted by the court or by any of the parties which would constitute grounds for setting aside the verdict or disturbing the judgment. The verdict reached by the jury in this case is consistent with substantial justice. Our rules of civil procedure require that the court must disregard, in every stage of the proceedings, any error or defect which does not affect the substantial rights of the parties. If any of the remaining matters specified by the defendants were error —and we do not believe that they were— they were harmless because the evidence is such that the jury could reasonably have reached no other conclusion than what it did reach in this case. See Rule 61, N.D.R. Civ.P.

No prejudice to either of the defendants could have resulted from any of the matters of which they complain on this appeal. It follows that the orders and the judgment of the district court must be affirmed. They are affirmed.

TEIGEN, C. J., and KNUDSON and ERICKSTAD, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.

On Petition for Rehearing.

STRUTZ, Judge.

The defendants have filed a petition for rehearing, raising several issues which were covered in the original opinion. We will deal with these issues not necessarily in the same order in which they are raised in the petition.

The defendants again urge that the presence of the minor children in the courtroom was prejudicial error, since they were too young to testify and the only reason for their presence was to influence the jury.

We will adhere to the views in our original opinion on this matter.

■ A second issue raised by the defendants' petition for rehearing is that the damages are excessive and not supported by the pleadings, and that they cannot be sustained. Defendants then argue that the evidence as to personal injuries of Vickie and Jeffrey Bartholomay, the two minor children, does not sustain the sums of $2,500 and $500 which the jury awarded to them respectively. They point to the testimony of the doctors that, except for the scar, Vickie had fully recovered.

We again have carefully examined the record. It discloses that Vickie suffered, among other things, a compound fracture of the right arm with fragments of the bone extending through the wound, lacerations and a fracture of the right leg, lacerations of the scalp and a fracture of the skull with evidence of brain trauma, and partial paralysis of the right facial area and of the right leg and arm. In other words, this child received severe and painful injuries. The verdict of $2,500 for her personal injuries was not excessive.

■ The boy, Jeffrey, suffered injuries which were far less severe. He did suffer lacerations, cuts, and bruises to his head and face. Colored photographs of his injuries and of his scars, which were taken ten days after the accident, were admitted in evidence without objection by the defendants. These show that the injuries sustained by the boy were such that a verdict of $500 which was awarded to him cannot be said to be excessive.

Defendants also point out that the trial court, in its instructions, advised the jury that the amount of damages which it might allow could not exceed the amount prayed for in the complaint. The court did instruct that the jury was limited by the amount sued for and pointed out:

"Therefore, if you find that the defendant John R. Quam was negligent and such

negligence was a proximate cause of the injuries complained of, you will return a verdict in favor of Vickie Lynn Bartholomay not to exceed $25,000.00 and a verdict for Jeffrey Bartholomay not to exceed $2500.00, in an amount which will fairly and adequately compensate each of them for the pain, suffering and disability which each incurred up to this time, and which will fully, fairly and adequately compensate Vickie Lynn Bartholomay for any future pain and suffering which you have found she may reasonably endure in the future, if any."

The defendants then contend that this limits the amount which the jury could award to the children, since no exception was taken to this part of the instructions and that this portion of the instructions thus became the law of this case.

The reference by the court to the limits of $25,000 and $2,500 for these minor children referred to the action which had been brought for them for their own personal injuries. It had no reference to any claim which they might have for the wrongful death of their mother. Just prior to the court's instructions as to the limitation on recovery by these minors, referred to in the defendants' petition, the court had instructed in reference to an award for the death of Diane Bartholomay, the plaintiff's wife and the children's mother. He told the jury that if it allowed the plaintiff husband and the children an amount for the death of Diane, the damages should be stated in one lump sum and that the court would apportion this sum among the husband and the minor children later, and that the total amount awarded for Diane's death could not exceed $75,000, the amount demanded in the complaint.

The court then submitted to the jury three separate forms of verdict. The first form provided for the awarding of damages to Gordon Bartholomay and to the two minor children, as the surviving husband and the children of Diane Bartholomay, for whose wrongful death the suit was being prose-

cuted. It further provided for damages to Gordon Bartholomay as the surviving father of the unborn child of Diane Bartholomay, for damages for Vickie and Jeffrey Bartholomay for personal injuries which were suffered by each of them, and, finally, for damages for the plaintiff Gordon Bartholomay for personal injuries suffered by him.

The second form of verdict submitted to the jury provided for damages for the two minor children as the surviving children of Diane Bartholomay, deceased, and for personal injuries suffered by each of such minor children.

The third form of verdict was for a dismissal of the complaint in the event the jury found for the defendants.

The record discloses that, before the instructions were submitted to the jury, the proposed instructions, together with the above-mentioned forms of verdict set out therein, were submitted by the court to the attorneys in the case. The trial court, in chambers and out of the presence of the jury, pointed out that the proposed instructions had been handed to counsel and then stated:

"* * * and at this time I want to ask you, Mr. Hansen, have you had sufficient time to examine the proposed instructions?

"MR. HANSEN: I believe I have, Your Honor.

"THE COURT: Mr. Stokes?

"MR. STOKES: I believe I have.

"THE COURT: Under Rule 51(c), Gentlemen, I would ask you to state any objection or exception to these instructions that you would want to make for the record, * * *."

Both sides then took exceptions to certain of the proposed instructions, but no exception was taken by the defendants to that portion of the instructions which permitted the jury to bring in a verdict for

the minor children for the wrongful death of their mother and for their own personal injuries, being the second form of verdict submitted to the jury. Where the defendant fails to object to forms of verdict which are set out and carefully explained in the trial court's instructions, and which are a part of the instructions, after having been given an opportunity to object, he cannot thereafter claim error when the jury returns one of such verdicts. 5A C.J.S. Appeal and Error § 1763(1), p. 1165, footnote 14.54; Salvatore v. City of Harper Woods, 372 Mich. 14, 124 N.W.2d 780; Gendler v. S. S. Kresge Co., 195 Minn. 578, 263 N.W. 925. As counsel for the defendants himself concedes, instructions to which no exceptions are taken become the law of the case, even though they may erroneously state the law. McCullagh v. Fortune, 76 N.D. 669, 39 N.W.2d 771.

 Thus the verdict for the minor children, Vickie and Jeffrey, for the wrongful death of their mother was proper under the instructions as given to the jury without objection.

The final issue raised by the petition for rehearing is the matter of collision, and the trial court's failure to specifically instruct on that point.

The court fully and fairly instructed the jury on the question of negligence, contributory negligence, and proximate cause. We have carefully reviewed the entire record, and there is no evidence supporting the defendants' theory of noncontact. Not one witness, including the defendant driver, testified positively that there was no contact between the truck and the plaintiff's car. Pieces of the plaintiff's vehicle's tail light were found in the left rear dual of the defendant's truck. A part of the tail light was found some forty feet to the north of the point of impact, in the south lane of traffic on the west side of the highway, where plaintiff's car had been traveling. The defendant Quam admitted that he may have hit the plaintiff's car. Not one witness denied contact, and the only positive statement that there was no contact is that of the defendants' attorney.

 While the trial court could have instructed on the question of contact, it was not error for the court to refuse to instruct on a theory of the defendants which is not supported by any evidence. Only such issues as are raised by the pleadings and supported by the evidence need be submitted to the jury.

For reasons stated herein, the petition for rehearing is denied.

TEIGEN, C. J., and ERICKSTAD and KNUDSON, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.